

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPHINE S. LOVOI                                CIVIL ACTION

versus                                            No. 00-161

APPLE ONE EMPLOYMENT SERVICES                     SECTION: E/4

**O R D E R**

Plaintiff Josephine S. Lovoi has submitted to the Court a letter, dated October 11, 2000, and a Memorandum to the Court, dated October 16, 2000, both of which are attached, wherein Ms. Lovoi expresses concern regarding the Court's impartiality in this matter. Considering the foregoing, I hereby **RECUSE** myself from these proceedings and **DIRECT** the Clerk of Court to re-allot this matter to another section of Court.

New Orleans, Louisiana, October 17, 2000.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　**MARCEL LIVAUDAIS, JR.**
　　　　　　　　　　　　　　　　　　　United States District Judge

REALLOTTED TO **SECT. L**

OCT 17 2000

DATE OF ENTRY
OCT 18 2000

JOSEPHINE S. LOVOI
843 AURORA AVENUE]
METAIRIE, LA 70005
(504) 833-7590

VIA FAX

October 11, 2000

Honorable Marcel Livaudais, Jr.
Senior United States Federal Judge     RE. Josephine S. Lovoi vs.
United States District Court              Apple One Employment Services
Eastern District                              USDC, 00-0161, "E"
600 Camp Street
New Orleans, LA 70130

Dear Judge Livaudais:

I'm in receipt of the copy of your ruling requesting that Jim Letten be terminated.

I want to make sure that I understand this court and should I assume that this holds for all courts the following:

1. Judge Livaudais, on his own sought out the truth as to what I told him about me being a contributing U. S. Witness.

2. Judge Livaudais received a letter from Jim Letten, his chosen source, for verification of what I advised the court about me being a U. S. Witness.

3. Jim Letten intentionally mislead this court to believe that I was not a U. S. Witness and Jim Letten further mislead this court about information that (1) did not have a thing to do with this case and (2) only gave the judge half of the information whereas false conclusion could be lead to those who read Jim Letten's letter.

4. Judge Livaudais has lead me to the conclusion that it is OK for "ANY" attorney to maliciously and intentionally mislead a court by not telling the truth to the judge and the court and be allowed to get away with this in ANY court.

5. I didn't notice where Judge Livaudais took the time to report this to Mr Jim Letten's supervisor, Mr. Eddie J. Jordan, Jr. of Mr. Letten's misleading information, but I did recognize that Judge Livaudais did take it upon himself to verify what "I" was telling him to be the truth  This has lead me to believe that Judge Livaudais could perhaps be using "DOUBLE STANDARDS." At anytime, should I believe that this court is showing any prejudice or aiding and abetting?

-2-

I am perplexed in this matter and would kindly appreciate that Judge Livaudais kindly further explain himself so that I can justify why Mr Letten was permitted to misrepresent himself, and cast doubt into Judge Livaudais mind or those who read Mr. Letten's reply in his correspondence to Judge Livaudais.

I believe that I am entitled to a further explanation or should I just assume that I am once again becoming a victim of something that is beyond my understanding?

Judge Livaudais, I would appreciate it if you would further think over this matter and see things as I am seeing this and the outcome and how it adversely affects me and my life.

I look forward to hearing from you and thank you for the consideration in this regard.

Sincerely,

*Josephine S. Lovoi*

Josephine S. Lovoi

jsl
cc: Office of Professional Responsibility
    Mr. J. Douglas Sunseri

P. S  an example

If the jury in the case of EDWARDS and BROWN did not accept the fact that Jim Brown lied to the FBI, why would you, Judge Livaudais give permission to Jim Letten to not tell the truth?

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSEPHINE S. LOVOI<br>PLAINTIFF | CIVIL ACTION |
| VS. | CASE NO. 00-161 |
| APPLE ONE EMPLOYMENT<br>SERVICES<br>DEFENDANT | SECTION "E" 4 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MEMORANDUM TO THE COURT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOW INTO COURT COMES Josephine S. Lovoi, plaintiff in pro se who files a Memorandum To The Court.

It was brought to this plaintiff's attention this past weekend via a newspaper article, See Exhibit "A," that Judge Livaudais was involved in the First Case in the mid 1980's of USA vs. EDWARDS.

This was the plaintiff's first knowledge of Judge Livaudais's involvement. I'm truly not sure as to how I should take this matter. The plaintiff feels that Judge Livaudais should have made it known in the beginning when the plaintiff told Judge Livaudais that she was a U. S. Witness in the Second case of USA vs. Edwards to the plaintiff that he had involvment in the First Case. The plaintiff questions if that is ethical on behalf of Judge Livaudais by not advising the plaintiff or for that matter all concerned involved in the Lovoi vs. Apple One Employment Services case.

The plaintiff wants it known to Judge Livaudais that the plaintiff has concern that could he possibly show prejudice in the Lovoi vs. Apple One Employment Services case.

The plaintiff will not ask for recusal of Judge Livaudais, but will leave the matter in

-2-

his good judgment as to what ethically should apply in this matter or if he should decide to recuse himself on his own.

Further, the plaintiff is given no other alternative but to advise those who are continuing their investigations of matters.

The plaintiff does not wish to read into things that she has no knowledge of, but is greatly concerned of perhaps "PATTERNS" that Judge Livaudais may be demonstrating. When this plaintiff asked for a Motion to Stay in this case, it was denied, but Judge Livaudais proceeded on his own to investigate this plaintiff as to whether she was telling the truth of the fact that she was a U. S. Witness in the Second USA vs. EDWARDS case. Judge Livaudais sought out Jim Letten, the prosecuting attorney in the Second case of USA vs. EDWARDS as a source of information, unbeknown to the plaintiff. The plaintiff alleged that Jim Letten had no authority to advise Judge Livaudais or anyone else for that matter if the plaintiff was in fact a witness of any case. Further the plaintiff alleged that Jim Letten VIOLATED the plaintiff's Constitutional Rights and placed the witness "AT RISK."

Mr. Jim Letten did reply to Judge Livadais with FALSE INFORMATION. Judge Livadais was asked via a Motion to terminate Jim Letten from his responsibilities as a public servant to the citizens of the United States. Judge Livaudais ruled that he had no authority. However, Judge Livaudais did have the authority and the obligation to report the "FRAUDULENT INFORMATION" to Jim Letten's superior and to the Office of Professional Responsibility. Judge Livaudais allegedly did not do so.

-3-

"IT IS A FEDERAL FELONY TO KNOW OF CRIME AND NOT REPORT IT."

Judges are not above the law to not report crime. In this case, Judge Livaudais not only allowed Jim Letten to falsify information and commit fraud to the court, but he also didn't report the crime to the proper authorities who had the authority to take the proper actions.

The plaintiff referred to a "PATTERN" earlier on in this pleading and wishes to document that according to the news article of October 14, 2000, See Exhibit "A," it appears that when the then Prosecuting Attorney, John Volz, in the first USA vs. EDWARDS case in the mid 1980's complained to Judge Livaudais, the judge then too took no action.

The plaintiff points out, that the difference between John Volz, the then U. S. Prosecutor, a public servant, trying to stay employed and reach the goal of retirement was that he knew that he had no recourse and it would not better his goal to reach retirement had he made it a further issue. In this plaintiff's case, she is trying to reach justice and feels that she could possible be prejudiced by this court for reasons beyond her control. Unlike Mr. John Volz, his goal was retirement. The plaintiff's goal is simply to be employed under the law and the Constitution of the United States.

The plaintiff is concerned that their could possibly be "DOUBLE STANDARDS" that is going on and that the court may not be focused on "EMPLOYMENT DISCRIMINATION," but instead, "POLITICS." The plaintiff is trying very hard to rule

-4-

out any OBSTRUCTION OF JUSTICE or AIDING AND ABETTING.

Had Judge Livaudais granted the Motion to Stay, perhaps all of the above may not have come. He didn't and it has, which was beyond the control of this plaintiff.

Because Judge Livaudais denied the Motion to Stay this case has proceeded. This court is well aware that in this case it was necessary to file a further complaint with the EEOC when Mr. Sunseri, the legal counsel for this defendant in this case "THREATENED" this plaintiff and denied her to contact her employer to advise the employer that she was available to work. This plaintiff further advised this court to refer to as evidence the court reporters tape recorder for verification (since it appears that Judge Livaudais has in the pass verified that the plaintiff is telling the truth and seeks out the truth on his own).

The plaintiff alleges the fact that since Judge Livaudais did not grant a Motion to Stay in this case then he has forced information about the USA vs. EDWARDS case to be made known public that not even the Grand Jury or the Jurors were given the opportunity to know of due to the alleged criminal activity that was going on behind the scenes with Eddie Jordan, Jr. and his alleged partners in crime inorder to tamper with evidence by not allowing the Grand Jury and the Jurors to know about.

What Eddie Jordan, Jr., U. S. Attorney didn't do, Mr. J. Douglas Sunseri did do and that was to bring forth the truth in the USA vs. EDWARDS case and the surrounding criminal activity of those that were involved.

Mr. Sunseri, with his diagrams and the plaintiff's improved diagram of the washing

-5-

of money helped to uncover further crime. This would include when Mr. Sunseri stated in the deposition that he was not offended when this plaintiff called to his attention how his law firm was not in compliance with the law and he welcomed the Justice Department to investigate. This can all be read in the hard copy of the deposition that Mr. Sunseri took on September 15, 2000 and heard on the court reporters tape recorder.

Mr. Sunseri managed to bring out the truth of the PERJURY that Mr. Robert Guidry committed in the case of USA vs. EDWARDS and the fraud that was committed by Robert Guidry at the same time in the LOVOI vs. TREASURE CHEST CASINO, ETAL. He further brought out how William J. Kelly, III, attorney for the law firm of Adams and Reese willfully and intentionally falsified information to the federal court about Robert Guidry and proved how corrupt some in the justice system would go along with the OBSTRUCTION OF JUSTICE AND THE AIDING AND ABETTING of a criminal

Mr. Sunseri did what Charles Matthews, the special agent for the FBI in New Orleans and Eddie Jordan, Jr., U. S. Attorney in New Orleans and L. J. Hymel, U. S. Attorney in Baton Rouge, La and Mr. East, FBI in Baton Rouge, LA wanted to hide from the Grand Jury and the Jurors in the USA vs. EDWARDS case, that their U. S. Witness, Robert Guidry was not a credible U. S. Witness.   Some acknowlegement should go to Judge Livaudais for making it all possible by not granting the Motion to Stay in the plaintiff's case.

Mr. Sunseri, can't even say that this is slanderous, because it was he who asked all of the questions in the deposition on September 15, 2000, that resulted to the answers of ex-

-6-

posing the criminal activity of which this plaintiff was obligated, under oath to answer truthfully and honestly.

Mr. Sunseri further exposed how a former supervisor, while the plaintiff was employed at the Grand Casino, in Gulfport, Ms. threatened the plaintiff's life and how others were involved in the matter while the plaintiff was a U. S. Witness.

Mr. Sunseri further exposed how this plaintiff was physically assaulted and how her assaultor is still out there and how Harry Lee refuses to arrest the assaultor, denying this plaintiff of her civil rights, because he is being paid off by Robert Guidry and how Paul Connick, the FBI in New Orleans and Eddie Jordan, Jr., U. S. Attorney in New Orleans will not arrest Harry Lee for CIVIL RIGHTS VIOLATIONS.

Perhaps all of those paychecks that are being disbursed to government workers should actually go to Mr. J. Douglas Sunseri who exposed this in record time and with less effort and little staff to assist. Mr. Sunseri should be nominated for a NOBEL PEACH PRIZE.

To the reader of this Memorandum to the Court, this is still a DISCRIMINATION LAW SUIT, but the plaintiff calls to your attention ALL OF THE CRIME THAT SURROUNDS the case and that is to include the defendant, and what brought this plaintiff to this court for justice. The plaintiff further alleges, had Federal Judge Mary Ann Vial Lemon not partaken in criminal activity in the case of LOVOI vs. TREASURE CHEST CASINO, ETAL when she allegedly aided and abetted criminals in perjury, therefore, committing SUBORDINATING PERJURY, the plaintiff would not be in THIS COURT, as the Federal Judge, Mary Ann Vial Lemon, INSTRUCTED this plaintiff,

-7-

"TO TAKE IT TO ANOTHER COURT."

However, Mr. Sunseri is not without alleged guilt as he "THREATENED" this plaintiff not to seek justice via investigations of one being that she was not allowed to contact her employer.

The planitiff would ask this court via motion for an investigation, but this plaintiff will presume that the court has no authority. But this plaintiff was pretty impressed when Judge Livaudais took the authority to see if this plaintiff was telling the truth. Therefore, perhaps Judge Livaudais MAY ONCE AGAIN TAKE IT UPON HIMSELF TO SEEK OUT THE TRUTH as he did so earlier in this case. AFTER ALL, IT IS A FEDERAL FELONY TO KNOW OF CRIME AND NOT REPORT IT, THAT WOULD HOLD FOR JUDGES AS WELL.

RESPECTFULLY SUBMITTED,

*Josephine S. Lovoi*
JOSEPHINE S. LOVOI
PLAINTIFF IN PRO SE
843 AURORA AVENUE
METAIRIE, LA  70005
(504) 833-7590

cc: Office of Professional Responsibility, Washington, D.C.
    Charles Plattsmier, LA Lawyer Displinary Board, Baton Rouge, LA
    Charles Matthews, Special Agent in Charge, New Orleans, LA
    Eddie Jordan, Jr., U. S. Attorney, New Orleans, LA
    L. J. Hymel, Special Agent in Charge, Baton Rouge, LA
    J. Douglas Sunseri, Attorney for defendant

-8-

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of this pleading was delivered to the legal counsel for the defendant via U. S. Mail, postage prepaid, hand delivered or via fax on October 16, 2000.

*Josephine A. Lauri*

EXHIBIT "A"

# The Times-Picayune

**SATURDAY, OCTOBER 14, 2000**

## Edwards research on jurors alleged

### Judge says '80s acts led to secret panel

**By Jack Wardlaw and Steve Ritea**
Capital bureau

BATON ROUGE — More than 100 associates and supporters of Edwin Edwards, possibly including law enforcement officials, participated in an organized effort to gather information about jurors before and during the former governor's federal trials in 1985 and 1986, according to court documents released Friday.

The information was included in a filing by U.S District Judge Frank Polozola to explain his reasons for keeping the names and addresses of jurors secret in Edwards' riverboat casino corruption trial this year. The documents provide the first details of the government's allegations of jury tampering in the earlier trials. There was a federal grand jury investigation of the allegations, but no one was indicted.

Polozola did not directly address the issue of jury tampering, but said government affidavits suggested the poten-

See **EDWARDS**, A-18

---

-18  SATURDAY, OCTOBER 14, 2000  THE TIMES-PICAYUNE

## Edwards denies jury tampering

**CONTINUED**

**EDWARDS, from A-1**

tial for undue or improper influence because the information gathering continued in the 1980s past attempts to interfere with the judicial process or witnesses." He also noted that Edwards was charged with witness tampering in a separate case. Edwards was acquitted on that charge Wednesday.

"Political operatives (for Edwards) contacted friends, neighbors and co-workers of potential jurors" Polozola wrote in outlining his reasons for granting the government's request for an anonymous jury in the riverboat case. "Research on the jurors continued during the course of a trial. There is some indication that a sheriff and some of his associates may have assisted the jury selection process."

Polozola said the court "can understand the need for gathering information about potential jurors" but "once the trial jurors are seated, continuing research on the jurors creates the potential for prejudicial communications, innocent or otherwise, with a juror or a friend, family member or co-worker of a juror, which contacts, though innocent in nature, can unduly influence a juror's decision. It is precisely this kind of communication, contact or influence that the Court wished to avoid."

Polozola said other reasons he wished in his decision to impanel an anonymous

jury, including the high-profile nature of the case, the serious charges involved, juror apprehension and "the defendants' past attempts to interfere with the judicial process or witnesses."

Polozola based his decision in part on affidavits and information supplied by federal prosecutors who were asking that the names and addresses of jurors be shielded from the public in the riverboat case. According to the affidavits, the jury selection and research process in the 1980s was "organized and efficient" and involved more than 100 close supporters of the former governor, Polozola said.

Edwards denied Friday that there were any attempts to influence jurors.

"It's totally inaccurate and unfair for the government to make those allegations," he said. "For the government to suggest, as they did, that there was anything improper about it is unfair and wrong."

Former U.S. Attorney John Volz, who prosecuted Edwards in those earlier cases, said he supported the aggressive information-gathering operation for U.S. District Judge Marvel Livaudais in 1985. "We complained to high heaven to the judge that this was improper, that this was

jury tampering, and the judge ignored it," Volz said.

"If John Volz had learned about any impropriety in the jury selection, you can rest assured you would have heard about it 15 years ago, not now," Edwards said.

Edwards had been indicted on charges that he used his political influence to get valuable permits for hospital constructions. The 1985 trial ended with a hung jury. Edwards was acquitted in the second trial in 1986. Both trials were held in New Orleans.

Edwards said he is still bothered by the fact that "we were never given an opportunity at any hearing to disprove" those allegations.

Edwards was convicted in May of extorting payoffs from casino executives who wanted a riverboat casino license. The fourth federal trial of his career ended Wednesday, with Edwards' acquittal on insurance fraud charges. Those two trials were held in Baton Rouge.

### Links to law enforcement

The possible involvement of law enforcement officials in gathering information for Edwards clearly raised concerns for Polozola. Citing an unrelated case dealing with a law enforcement officer improperly using contacts in a jury tampering case, Polozola wrote "It is clear

that Edwin Edwards' 16 years of service as Governor of Louisiana have provided him with similar kinds of contacts."

Volz would identify the sheriff referred to in Polozola's report only by describing him as "very influential."

Jefferson Parish Sheriff Harry Lee, a close friend and longtime political ally of Edwards, said he is not the sheriff referred to in the court documents. Lee said that during one of the 1980s trials he was asked to drive by a potential juror's home in Harahan to get an idea of the person's financial situation. But he said he never spoke to anyone there, nor did any of his associates.

"I would never talk to anybody and I would never tell anybody who works for me to talk to anybody," Lee said, noting that it would be illegal to do so.

Edwards' defense counsel in those trials was Alexandria lawyer Camille Gravel, "a very respected attorney," Edwards said. Gravel was unavailable for comment Friday.

Mike Baer, now secretary of the state Senate, was affiliated with the Gravel law firm during that time and said he assisted in some research on jurors. He said no one in his office did anything improper.

"We didn't contact anyone who might have had any influence on a juror. That would

have been illegal," he said. "Camille told us to be very, very careful about that."

Baer said he did check the addresses of potential jurors in the New Orleans area by ward and precinct, and cross-checked against recent election returns. Those who lived in precincts where Edwards ran well were considered favorably in the jury selection process.

"We weren't looking for people who had already decided he wasn't guilty, but we were looking for people who would feel the government had to prove him guilty," Baer said.

Baer said he filed an affidavit with the court detailing his jury research activities, and Gravel did the same.

### Background checks

Polozola also noted an FBI interview with Paul Fontenot, then the state trooper with primary responsibility for protecting Edwards. Fontenot is quoted as saying that members of the governor's staff asked him to perform records and license plate checks on various people during the trials. Fontenot also was quoted as saying that Edwin Edwards' son Stephen Edwards later requested him to perform background checks on various people. It is not clear if any of the checks involved jurors or potential jurors.

Fontenot was superintendent

of State Police during Edwards fourth term, 1992-96. Gov. Foster replaced him in 1996, and Fontenot retired in August 2000. He was not available for comment Friday.

Stephen Edwards was a co-defendant in the riverboat gambling trial and also was convicted.

Polozola wrote that "it is also clear that during the prior trial, the defense team continued to receive information about the sitting jurors during the course of the trials."

Polozola said he did not consider it necessary to resolve the conflicts between the affidavits and the defense team's response to them "to a certainty. Thus evidence, when combined with the other evidence considered by the court, strongly supports the court's decision to withhold the names, addresses and places of employment of the jurors."

Some of the allegations of tampering came after juror Clifford J. West said he was urged during the trial by an unnamed person to vote for Edwards' acquittal. Defense attorneys had asked for West's dismissal from the jury after he gave "reporters a 'thumbs down' sign during deliberations. The judge refused the request and the trial continued.

••••••
Staff writer Natalie Pompilio contributed to this report