COPY IN CHAMBERS

U.S. DISTRICT COURT
Eastern District of Louisiana

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED **15 NOV 2000**

LORETTA G. WHYTE
Clerk
NOV 15 2000

JOSEPHINE S. LOVOI                    CIVIL ACTION
    PLAINTIFF

VS.                                   CASE NO. 00-161

APPLE ONE EMPLOYMENT                  SECTION "L" (4)
SERVICES
    DEFENDANT

************************************************************************
MOTION AND MEMORANDUM FOR LEAVE TO FILE
SUPPLEMENTAL EVIDENCE
************************************************************************

NOW INTO COURT COMES, Josephine S. Lovoi, plaintiff in pro se who Motions this court to leave to file supplemental evidence.

Plaintiff wishes to call to the attention of this court Exhibit "II." Exhibit "II" was given to the plaintiff on November 14, 2000, via request for production of documents. This is the first time that this plaintiff has viewed this Exhibit.

The plaintiff calls to the attention of this court just how allegedly unprofessional the individuals are who work for the defendant APPLE ONE EMPLOYMENT SERVICES. In Exhibit "II" Ms. Jessie Van Stubbs certainly took the time to refer to the plaintiff as **"EMPLOYEE." This verifys exactly what the plaintiff has been saying all along in this court case. The plainiff is, was and still is an employee of APPLE ONE EMPLOYMENT SERVICES. At no time while employed with APPLE ONE EMPLOYMENT SERVICES was this plaintiff ever informed in 1990 that her records were going to be or will be destroyed at anytime after she left the State of California and returned to the State of Louisiana, nor did the**

DATE OF ENTRY
NOV 16 2000

Fee_____
_Process___
X  Dktd____
X  CtRmDep__
    Doc.No.__74__

-2-

**plaintiff sign any papers of understanding about this matter as well or was given any literature of explanation.** Ms. Jessie Van Stubbs further proceeds to defame the employee/plaintiff with "CHARACTER ASSASINATION" by referring to her as an "ANGRY EMPLOYEE."

Ms. Jessie Van Stubbs proves beyond a reasonable doubt what this plaintiff pointed out in her MOTION AND MEMORANDUM REQUESTING THAT THIS COURT ORDER THE DEFENDANT TO CEASE BUSINESS OPERATIONS IN AMERICA. On the second page of that pleading in the third paragraph, this plaintiff stated "What the plaintiff does allege is that they do REHEARSE employees and management on how to be defensive when a knowledgeable employee expresses their rights under these laws and refuses to partake of the company's discrimination practices." Ms. Jessie Van Stubbs' word's are **"I WANTED TO GIVE YOU FAIR WARNING."**

Ms. Jessie Van Stubbs makes all efforts to focus that this employee was the ONLY ONE at fault. When in fact the truth of the matter was that it was her own employees and herself were at fault. It was the FULL responsibility of Carson, the Account Executive to make sure that all paper work was properly taken care of. Carson failed her responsibilities. See Exhibit "DD." Ms. Van Stubbs makes not effort to call to Ms. Lisa Kearney's attention ALL PREVIOUS contacts that the plaintiff had with several different employees in that office or how the plaintiffs records were not transferred to the Metairie office. Exhibit "KK" certainly proves that the plaintiff was employed with Apple One Employment Services. Ms. Jessie Van Stubbs did not inform Ms. Lisa Kearney how

-3-

nasty and rude that she was to the employee/plaintiff. Nor, did Ms. Van Stubbs follow any company policies and procedures. See Exhibit "DD," which by the way is the first time that this plaintiff is reviewing this exhibit and was made aware of it. It states "THE APPLICANT IS THE CENTER OF THE UNIVERSE." This plaintiff wonders where along the line did Ms. Jessie Van Stubbs forget that it is the APPLICANT/EMPLOYEE that earns revenue for the defendant and companies like it, because of their experience and skills.

So, from the plaintiffs vantage point, there were company policies that were in writing for the in office Apple One Employment Staff to follow, but they weren't following the company policies and procedures. Because of their lack of professional skills and trying to cover their A_ _ this plaintiff was not properly handled. Is there no wonder in the minds of this court why the plaintiff filed a "FORMAL COMPLAINT" WITH THIS COURT and "MOTION AND MEMORANDUM REQUESTING THAT THIS COURT ORDER THE DEFENDANT TO CEASE BUSINESS OPERATIONS IN AMERICA."

This company demonstrated that they can't follow their own policies and procedures so how does this employee/plaintiff expect the owner and staff of APPLE ONE EMPLOYMENT SERVICES to follow the "**LABOR LAW**." Much less any CONTRACTS that they are signing in agreement with clients and vendors that they will uphold the laws of a "SUBCONTRACTOR!!!!!!!" under the Office of Federal Contract Compliance Programs. The plaintiff alleges that it is companies like this who take up the courts time because of their lack of ability to be responsible and professional and who see their greed to succeed and will sign anything but not adhere to CONTRACTS, POLICIES

-4-

and PROCEDURES or LAWS.

Ms. Van Stubbs opinion was that the employee/plaintiff went ballistic. If a federal judge was interfacing with Ms. Van Stubbs and knew what the plaintiff knew about the lack of unprofessionalism that was acting out in front of the plaintiffs face by several different employees, it is the opinion of this plaintiff that the federal judge would have ceased the defendants operation of business immediatley.

When the plaintiff arrived **after being instructed to by Ms. Van Stubbs**, the plaintiff followed Ms. Van Stubbs request to complete paper work that
the plaintiff should not have had to fill out and that is demonstrated by the fact that the employee already had an application on file and the fact that she did produce a new resume to Carson, the Account Executive earlier. When this plaintiff questioned where the paper work was, Ms. Van Stubbs pulled the paper work out of the hands of the plaintiff. The plaintiff was highly offended by this and knew that she was being discriminated against because of her age, experience and knowledge. The plaintiff did state that she was going to EEOC as Ms. Van Stubbs laughed her way out of the room.

If Ms. Van Stubbs took the time to call to the attention of Lisa Kearney in Personnel that there was a matter going on, did Ms. Lisa Kearney in PERSONNEL in corporate headquarters telephone the plaintiff to find out any other side of a story that perhaps corporate would want to know. ABSOLUTELY NOT. The plaintiff alleges that Ms. Kearney aided and abetted Ms. Van Stubbs in her NEGLIGENT MISREPRESEN-TATION and CHARACTER ASSASINATION of an employee. In the meantime, when

-5-

the owner of the company was notified of the matter. The matter was completely ignored by the owner. In the plaintiff's opinion, this like is a pattern and demonstrates the owners lack of care for what goes on inside of his own company which further demonstrates his lack of respect for his clients. Should the receipient CONTRACTORS of OFCCP financially loose any revenue or contracts, the plaintiff recommends that they all sue the defendant for their losses. To the benefit of OFCCP, this matter did bring to their attention of CRIMINAL ACTIVITY and for that we do want to thank Judge Livaudais and Mr. J. Douglas Sunseri.

RESPECTFULLY SUBMITTED,

JOSEPHINE S. LOVOI
PLAINTIFF IN PRO SE
843 AURORA AVENUE
METAIRIE, LA 70005
(504) 833-7590

CERTIFICATE OF SERVICE

I do hereby certify that a copy of this pleading was given to the legal counsel of the defendant via United States Mail, postage pre paid, via fax or hand delievered on November 15, 2000.

ORDER

IT IS ORDERED THAT the plaintiff is GRANTED leave to file the attached memorandum and exhibits, ~~on~~ Nov 16, 2000 in New Orleans, Louisiana.

_____
UNITED STATES FEDERAL JUDGE

**From:** Lisa Kearney - Personnel (corp)
**Sent:** Tuesday, September 28, 1999 10:28 AM
**To:** Jessie Vann Stubbs - 120
**Subject:** RE: ANGRY EMPLOYEE

Thanks for the info. If she calls me I'll let you know.

-----Original Message-----
**From:** Jessie Vann Stubbs - 120
**Sent:** Tuesday, September 28, 1999 6:57 AM
**To:** Lisa Kearney - Personnel (corp)
**Subject:** ANGRY EMPLOYEE

Lisa,

I wanted to give you fair warning. I had an employee that called in available yesterday. Her name is Josephine Lovoi. When she called in, I informed her that her application was incomplete and that I needed her to come in to complete it. The consent to check references was not filled out, no reference information was given (supervisor/ phone number or addresses), no I-9. Well, needless to say she went ballistic. She came in this morning, livid, would not allow me to speak and said that she was going to the EEOC and reporting us. I did ask her for what grounds and she said for discrimination. She said too, that she would be calling our corporate office, so I wanted y'all to have a heads up. She called me 25 minutes after she left and wanted my full and complete spelling of my name because she said that she didn't want it misspelled on a legal document. Please let me know if you need further information.

Thanks-
Jessie


ATTN: D. SUNSERI   11/1

RE: LOVOI

FROM: MARI B. UNLAND
       APPLEONE



EXHIBIT
II

```
DATE: 11/15/99   TIME: 10:56              HOWROYD-WRIGHT, DBA APPLEONE CA                                      PAGE: 1
                                          EMPLOYEE EARNINGS REPORT (45)
        CO# 1 TO 99 \ SSN# 434769981 TO 434769981 \ FROM 01/01/80 TO 11/30/99 \ TOTALS ONLY N \ DETAIL Y

Employee...................  Check.# GL Date  Off Gross.Pay. Tax.Gross. Fed..... State... FICA.... SDI..... Deductn. Net.Pay...
                             CUSTOMER.................. JOB TITLE... PAY CODE... HOUR.... RATE....
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 LOVOI, JOSEPHINE S. 1202419 04/17/90  7    180.00    180.00    17.62    0.97   13.77    1.62             146.02
                             029576-0000 BRYANT ORGANIZATION  RECEPTIONIST   1-REG1   24.00    7.50
                             1206477 04/25/90  7    300.00    300.00    35.62    4.91   22.95    2.70             233.82
                             029576-0000 BRYANT ORGANIZATION  RECEPTIONIST   1-REG1   40.00    7.50
                             1209706 05/02/90  7    345.00    345.00    42.37    7.03   26.39    3.11             266.10
                             029576-0000 BRYANT ORGANIZATION  RECEPTIONIST   1-REG1   40.00    7.50
                                                                           2-O/T1    4.00   11.25
                             1213338 05/09/90  7     87.50     87.50     1.75          6.70    0.79              76.26
                             032266-0000 A.M. KRANTZ           WP SECY        1-REG1    8.00   10.00
                                                                           2-O/T1    0.50   15.00
                             1211444 05/09/90  7    252.00    252.00    28.42    2.99   19.28    2.27             199.04
                             036630-0000 SKIPPER MARINE ELECT  RECEPTIONIST   1-REG1   28.00    9.00
                             1213975 05/15/90  7     49.50     49.50                   3.79    0.45              45.26
                             036630-0000 SKIPPER MARINE ELECT  RECEPTIONIST   1-REG1    5.50    9.00
                             1215285 05/16/90  7    240.00    240.00    26.62    2.51   18.36    2.16             190.35
                             032299-0000 REPUBLIC BANK         SECRETARY      1-REG1   24.00   10.00
                             1218019 05/23/90  7    400.00    400.00    50.62   10.33   30.60    3.60             304.85
                             032299-0000 REPUBLIC BANK         SECRETARY      1-REG1   40.00   10.00
                             1219732 05/30/90  7    400.00    400.00    50.62   10.33   30.60    3.60             304.85
                             032299-0000 REPUBLIC BANK         SECRETARY      1-REG1   40.00   10.00
                             1224439 06/06/90  7    276.75    276.75    32.13    3.98   21.17    2.49             216.98
                             028678-0000 ACTION KART-A-SHED,   SECRETARY      1-REG1   30.75    9.00
                             1225994 06/13/90  7    372.50    372.50    46.50    8.68   28.50    3.35             285.47
                             014600-0002 BAVARIAN* SPECIALTY   WP GENERAL     1-REG1   37.25   10.00
                             1230040 06/20/90  7    337.50    337.50    41.25    6.58   25.82    3.04             260.81
                             019882-0011 HOME FEDERAL SAVINGS  SECRETARY      1-REG1   37.50    9.00
                             1232868 06/27/90  7    308.25    308.25    36.86    5.24   23.58    2.78             239.79
                             019882-0011 HOME FEDERAL SAVINGS  SECRETARY      1-REG1   34.25    9.00
                             1236028 07/05/90  7    342.00    342.00    41.92    6.85   26.17    3.08             263.98
                             019882-0011 HOME FEDERAL SAVINGS  SECRETARY      1-REG1   38.00    9.00
                             1230040 07/09/90  7    337.50-   337.50-   41.25-   6.58-  25.82-   3.04-            260.81-
                             019882-0011 HOME FEDERAL SAVINGS  SECRETARY      1-REG1   37.50-   9.00
                             1237596 07/11/90  7    135.00    135.00    10.87    0.07   10.33    1.22             112.51
                             019882-0011 HOME FEDERAL SAVINGS  SECRETARY      1-REG1   15.00    9.00
                             2918914 07/11/90  7    337.50    337.50    41.25    6.58   25.81    3.05             260.81
                             019882-0011 HOME FEDERAL SAVINGS  SECRETARY      1-REG1   37.50    9.00
                             1260486 09/12/90 34    336.00    336.00    41.02    6.49   25.71    3.03             259.75
                             032022-0000 CITY OF RANCHO PALOS  WP SECY        1-REG1   32.00   10.50
                             1264042 09/19/90 34    420.00    420.00    53.62   11.53   32.13    3.78             318.94
                             032022-0000 CITY OF RANCHO PALOS  WP SECY        1-REG1   40.00   10.50
                             1267542 09/26/90 34    406.88    406.88    51.65   10.74   31.13    3.66             309.70
                             032022-0000 CITY OF RANCHO PALOS  WP SECY        1-REG1   38.75   10.50
                             1269705 10/03/90 34    420.00    420.00    53.62   11.53   32.13    3.78             318.94
                             032022-0000 CITY OF RANCHO PALOS  WP SECY        1-REG1   40.00   10.50
                             1272826 10/10/90 34     60.00     60.00                   4.59    0.54              54.87
                             029576-0000 BRYANT ORGANIZATION   RECEPTIONIST   1-REG1    8.00    7.50
                             1273658 10/17/90 34    481.25    481.25    68.62   16.00   36.82    4.33             355.48
                             018392-0002 RALPHS GROCERY COMPA  WP SECY        1-REG1   40.00   11.00
                                                                           2-O/T1    2.50   16.50
                             1285193 11/14/90 34     75.84     75.84     2.00          5.80    0.68              67.36
                             018392-0002 RALPHS GROCERY COMPA  GEN OFF/CLER   1-REG1    8.00    9.48
```

EXHIBIT "KK"

```
DATE: 11/15/99  TIME: 10:56           HOWROYD-WRIGHT, DBA APPLEONE CA                                    PAGE:  2
                                         EMPLOYEE EARNINGS REPORT (45)
            CO# 1 TO 99 \ SSN# 434769981 TO 434769981 \ FROM 01/01/80 TO 11/30/99 \ TOTALS ONLY N \ DETAIL Y

Employee................... Check.# GL Date  Off Gross.Pay. Tax.Gross. Fed..... State... FICA.... SDI..... Deductn. Net.Pay...
                            CUSTOMER....................... JOB TITLE... PAY CODE... HOUR.... RATE....
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 LOVOI, JOSEPHINE S. 1288338 11/21/90 34   125.00    125.00    9.37              9.56    1.13              104.94
                    035476-0000 HARBOR FREEWAY AUTO  SENIOR TYPIS  1-REG1   12.50   10.00
                                                 ---------- ---------- -------- -------- -------- -------- -------- ----------
                                                   6,350.97   6,350.97   745.07   126.76   485.87    57.20            4,936.07
                                                 ========== ========== ======== ======== ======== ======== ======== ==========
                                                TOTAL REG HOURS =    661.50            TOTAL O/T HOURS -      7.00


                            TOTALS FOR COMPANY 1-HOWROYD-WRIGHT,DBA A
    GROSS PAY... TAX GROSS... FEDERAL TAX. STATE TAX... FICA........ SDI......... CITY........ NET PAY.....
      6,350.97    6,350.97      745.07      126.76       485.87       57.20         0.00        0.00
```



NEST Manual
Interviewing     1501     11/23/98

# INTERVIEWING – GENERAL

As a sales person, regardless of the product or service you sell, there is one thing you will always have to manage -- your time. There are only so many productive selling hours in each day. The first focus of every individual attempting to sell anything must be to find people who are in the "buying window". In other words, identifying whom is currently or will soon be, in need of the product or service that the salesperson is offering.

Sales people spend most of their time looking for the prospect that is in the buying window. Since they do not know where to look, they cold call. On average, a sales associate spends less than 25% of their time actually selling.

In the Employment Services Industry this factor compounds. This is because ours is a dual sale. First, we must sell the applicant on the idea of using our services to find a position. Secondly, we must sell the employer on the idea of using our services to find the right employee when they have a full-time or temporary position available. Therefore, without an effective strategy to identify prospective applicants and clients an Account Executive could spend all of their time searching for prospects rather than talking to prospects.

The good news is that there is an easier way to find out who is in the buying window rather than blindly calling through the phone book - talking to candidates.

*THE APPLICANT IS THE CENTER OF THE UNIVERSE.* It's not only because you cannot make a placement without an applicant (you can't, by the way) but it's also because the applicant has the power to put the Account Executive where the action is; in front of applicants and employers in the buying window. Applicants (as a rule) are involved in an active job search or are actively working with other temporary agencies. The applicant knows where the action is because they have either just been there or will be on their way there soon. By effectively working with applicants we can capture and leverage their information. Applicants permit us to spend our time talking about business today, rather than searching for leads for developing our business tomorrow.

Remember - *WE ARE IN THE INFORMATION GATHERING BUSINESS*. Using the Triangle of Success in the interview we gain valuable information.

## THE INTERVIEW

Interviews are not simply a process we use to gather dates and facts. In an interview we work to gain the trust and the cooperation necessary to ensure that the applicant will not compromise our position with our client. Establishing this trust will allow us to find out what the applicant's true needs and wants are. This will be critical in the matching process and throughout our relationship with the applicant. It will allow us to gain references and referrals to develop more business. It is very important that the applicant feels and believes that we are working for them. Developing trust and cooperation is absolutely necessary if we are going to be successful.

**When you begin your interview be sure to do the following:**

- Clear your desk
- Have all your calls held (except in cases of absolute emergency)
- Review any notes you already have on the applicant or position (if applicable)
- Make the applicant feel comfortable (BUILD RAPPORT)
- Review Employment Application and highlight any gaps
- Explain the interview process and purpose before beginning

The interview is now ready to begin.

EXHIBIT DD

*"How long should the interview last?"* It should last as long as you are obtaining information that is useful to you as an account executive. Information on potential leads, candidate's limitations & strengths, potential recruits, referrals, etc.

There are times when you will interview an applicant that you will be unable to place. Do not treat them as a waste of your time. Even these candidates can give you valuable information. They may have worked at a company that you are marketing, they may know someone who is looking to hire, they may know someone with great word processing skills, etc. Using the Triangle of Success - get the information!

Some general rules in obtaining information from your applicant:

- You must verify all dates and facts for accuracy.
- You should be sure to get specifics and measurements as applicable for all shifts and job duties.
- Ask the applicant to describe a typical workday for you.
- Use as many open-ended questions as possible.
- Watch for eye contact, assertiveness, and other traits that will be critical to superior matching.
- You will want to know what the individual's likes and dislikes were of each position they have held in the past.
- Also, ask how they found each job and who was the hiring authority? Ask them if they used another service to obtain those positions.
- Be sure that for full-time positions, you compare answers to both the employment application and the resume for consistency.
- Be sure that you get names, positions & titles, and current phone numbers for references at each past job.
- If the applicant is not currently working, find out if their last position is still open.
- Be sure to ask for complete and coherent reasons for each career change.
- Be sure you ask any question that you feel your client may ask you, and be sure to observe how your applicant answers.

Coaching is best done in an AppleOne office before a client interview, not afterwards. In review:

| Function | Purpose |
| --- | --- |
| Verify accuracy of dates | Screening, Presenting, Marketing |
| Verify skills, duties, accomplishments | Screening, Matching, Presenting, Marketing |
| Eye contact, assertiveness, other traits | Matching, Marketing |
| Likes and dislikes of each position | Matching, Presenting |
| How positions were found | Marketing |
| References | Marketing, Recruiting |
| Last job vacant | Marketing, Recruiting |
| Observe answers and interview technique | Matching, Presenting |

The next step is to clarify the applicant's earning expectations. You must be clear on this figure. The best way to ensure this is to explain that you will not present the applicant to any client with a job order below this figure. Be sure you understand what the applicant's motivations are (actively looking) or would be (recruited) to accept the next position.

Explain that working temporary or temp to full-time sometimes allows them to get their foot in the door and see if they may consider a reduced salary for a prestigious opportunity. Next, have your applicant share with you the five things they liked least about prior positions. This can be anything from benefits to physical working conditions.

Then have them describe for you their ideal job, and the five most important items. Before you continue, ensure that you have covered these critical points.

- Minimum acceptable compensation
- Application motivation
- Career position knockoffs
- Career position knockouts
- Career position desires/ideals
- Build Rapport
- Defined the NEEDS, WANTS, and WINS of the applicant
- Defined the applicant's professional and interviewing skills
- Gain necessary data to check references
- Clearly communicate benefits to the applicant

- Define the applicant's level of commitment
- Acquired leads for business opportunities that the applicant has seen in their pursuits

**AppleOne has a clearly stated policy of providing equal employment opportunities:**

- *It is the established policy of AppleOne to provide equal opportunity for all*

- *All applicants for employment with AppleOne receive consideration for employment without regard to race, color, religion, origin, ancestry, sex, age, marital status, or disability.*

- *All job orders from our clients are reviewed and filled solely on the basis of the job related qualifications of our candidates. A discriminatory job order will not be accepted and candidates are referred on a non-discriminatory basis.*

- *AppleOne does not maintain nor provide for its employees segregated facilities at any of its locations. Neither does it permit its employees to perform their services at any location where segregated facilities are maintained.*

- *This policy is communicated to all AppleOne offices. All managers, supervisors and employees are counted on wholehearted support to make this Equal Employment Opportunity program successful.*

Understand that it is your responsibility to ensure that AppleOne and you are always in full compliance of our stated policy. Should any situation arise that you are unsure of, stop immediately and ask your manager for consultation.

## THE INTERVIEW

Conducting a successful interview is very similar to taking a complete job order. The information you seek is vital to the successful placement of your applicant. At the conclusion of a proper interview you should be able to be the person you represent. You should know what they will do, where they will do it, how much they want to do it, and when they are available.

Before you begin your interview, you must quickly review the application to ensure completeness. With a highlighter, make note of any items not completed (i.e.: phone #s, etc.) If you notice employment gaps or other concerns you will want to address them and highlight those as well.

Back